## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**UNITED STATES OF AMERICA**        **CRIMINAL NO. 12-cr-00158**

**VERSUS**        **JUDGE HAIK**

**TIAN LEI TANG (01)**        **MAGISTRATE JUDGE HANNA**

### Report and Recommendation on Motion to Suppress
### *(Doc. 109)*

Before the undersigned is the Motion to Suppress Evidence Seized Pursuant to Search Warrant filed by defendant Tian Lei Tang. [Rec. Doc. 109]   Oral argument was heard on the motions on July 16, 2013.  Based on the applicable law, the legal memoranda and arguments of counsel, and the review of the record, it is the recommended that the motion be denied.

### *Factual and Procedural Background*

On July 30, 2012, a search warrant was issued for the premises of Buffet City, 120 Curran Lane, Suite A, Lafayette Louisiana.  The warrant was executed on August 1, 2012. On August 16, 2012, three defendants, including Tang, were subjects of a Superseding Indictment charging each with conspiracy to harbor certain aliens (Count 1) and harboring aliens (Count 2) in violation of 8 U.S.C. §1324. [Rec. Doc. 30-31]

Count One alleges that Tang is a registered agent/director of two

corporations doing business as Buffet City in Lafayette, Louisiana.  Beginning before November, 2008, and continuing through the date of the superseding indictment, it is alleged that Tang and the two other defendants, "and with others known and unknown" unlawfully combined, conspired, confederated and agreed together to circumvent the U.S. immigration laws by concealing, harboring or shielding from detection certain illegal aliens. Together, the defendants are alleged to have hired many illegal Hispanic workers to work in the kitchen of the Buffet City restaurant.  [Rec. Doc. 31]

The following facts are taken from the affidavit issued in support of the search warrant that is the subject of this motion:[1]

In November of 2008, the Lafayette Police Department was dispatched to a disturbance in progress with weapons at 140 Antigua Drive. An altercation had occurred in which one of the residents had been stabbed. Six foreign nationals who could not provide valid identification were occupants of the residence. Marijuana plants were discovered and none of the individuals would take responsibility for them so all six were arrested. All were employees of Buffet City restaurant. Database checks indicated Tang and his co-defendant Hua Can Ye were the owners/managers of Buffet City.

Based on information developed from confidential informants, it was

---

[1] The affidavit may be found at Rec. Doc. 109-3.

learned that the workers were transported to the restaurant in two vans one of which was registered to Tang. Further investigation revealed that a number of checks for rent that were issued to the owner of the residence on Antigua Drive from July through December of 2008 were all signed by Tang. The checks were drawn on the business account of Tian Hua, Inc. (DBA Buffet City)

Tian Hua, Inc. (DBA Buffet City (c/o) Hua Can Ye) also leased some apartments located on West Congress street.  An illegal alien named Cruz-Orellano who was also employed at Buffet City resided in one of them. Cruz-Orellano was arrested in February 2012 for being illegally present in the United States. He stated that he was never asked to provide paperwork at Buffet City and was paid in cash. He stated that he and other Hispanic workers employed at Buffet City were illegally present in the United States and not eligible to be working. These workers also resided at the apartments and the majority of the rent checks for their apartments were also signed by Tang.  The checks for the rent were drawn on the business accounts of Tian Hua Inc. (DBA Buffet City) and Tian Ming, Inc. (DBA Buffet City). Surveillance revealed they were transported to and from Buffet City in a van registered to Hua Can Ye. The lease for the apartments began in December of 2008 until the occupants were evicted in December of 2011.

On December 16, 2011, Hua Can Ye, entered into a lease for a residence located on Scotsdale Street. The utilities were registered to the same person. The

rent was paid through  the business account of Tian Ming, Inc. (DBA Buffet City) and all of the checks were signed by Tang's other co-defendant Da Dong Ye. The date of the last check was May 3, 2012.

The search warrant was for the premises of Buffet City. The warrant and affidavit are dated July 30, 2012 and the search was conducted August 1. (Rec. Doc. 109-2, 109-3) Attachment A to the warrant identifies the premises to be searched and  Attachment B delineates the items to be seized. (Rec. Doc. 109-2)

***Positions of the Parties***

Tang asserts that (a) the search of the Buffet City restaurant was conducted pursuant to a search warrant that was based on an affidavit containing stale information; (b) the 'items to be seized' section of the warrant does not correspond to the contents of the affidavit, both of which are overbroad; and (c) the affidavit does not set forth sufficient probable cause. [Rec. Doc,. 109, pp. 5-7] Tang asserts that he sold the Buffet City restaurant 2 years before the indictment, and he has only worked at the restaurant managing the dining room on a part-time basis since the sale. He also asserts that the affidavit contains conclusory information regarding the ownership of Buffet City, the alleged violations of federal law, and the affidavit lacks factual allegations that Tang acted illegally. In short, Tang urges that the 'four corners' of the affidavit do not support probable cause for the search warrant.

In response, the government argues that the affidavit reflects an investigation spanning a protracted, continuous period of conduct, showing an ongoing pattern of criminal activity in harboring illegal aliens through cash payments, housing, and transportation, from November, 2008 through May, 2012, diminishing the significance of the staleness argument by Tang.  The government further argues that a reading of the subject affidavit allows the reasonable assumption that individuals arrested in November of 2008 on unrelated charges, who could not provide valid identification, lived in apartments rented and paid for by the owners of vans which transported the same individuals to/from Buffet City restaurant. The same individuals who owned the vans and paid the rent also owned/managed Buffet City restaurant. The government contends the affidavit contains sufficient information to establish probable cause to believe that harboring of aliens was occurring by the owners/managers of  Buffet City restaurant during that period and that the items to be seized are evidence of such criminality. [Rec. Doc. 121]

***Applicable Law and Discussion***

**1. Staleness**

Tang argues that the most recent date referenced in the affidavit relates to a check issued from the Buffet City account on May 3, 2012 (for apartment rent payment), which was signed by defendant Da Dong Ye.  The affidavit is silent as

to his identity or his relationship with the either the restaurant, Tang or Hua Can Ye.  The affidavit does, however, establish that Ye, on behalf of Tian Ming, Inc., signed the lease on the referenced apartment in December, 2011which Tang acknowledges. [Rec. Doc. 109, p. 6] Tang had previously signed checks for rent payments drawn on the business account of Tian Ming, Inc.

The affidavit alleges a continuing enterprise that was ongoing from 2008 until 2012 shortly before the affidavit was executed.  While it is true that "the information given to the magistrate in an application for a search warrant must be timely . . . [and] the proof must be of facts closely related in time to the issuance of the warrant in order to justify a finding of probable cause at that time. . . if an affidavit recites activity indicating protracted or continuous conduct, time is of less significance."   *United States v. Hyde*, 574 F.2d 856, 864-865 (5th Cir.1978) quoting *Sgro v. United States*, 287 U.S. 206, 210-11, 53 S.Ct. 138, 140, 77 L.Ed. 260 (1932) and *Bastida v. Henderson*, 487 F.2d 860, 864 (5th Cir. 1973). See also *United States v. McKeever*  5 F.3d 863, 866 (5th Cir.1993).

The facts of this case are such that the defendant's claim of staleness is without merit. In *United States v. Webster*, 734 F.2d 1048, 1056 (5th Cir. 1984) the court stated :

> Staleness is to be determined on the facts of each case. See *United States v. Freeman*, 685 F.2d 942 (5th Cir.1982). No mechanical counting of the time between the events alleged in the affidavit and

the time the warrant is issued will be made. Moreover, a finding of
staleness or timeliness of information can depend upon the nature of
the unlawful activity and, when the information of the affidavit
clearly shows a long-standing, ongoing pattern of criminal activity,
even if fairly long periods of time have lapsed between the
information and the issuance of the warrant, the information need not
be regarded as stale. See *United States v. Freeman*, 685 F.2d 942,
951–52 (5th Cir.1982).[2]

In addition, the nature of the evidence sought to be obtained is relevant to

the inquiry. "Courts are more tolerant of dated allegations if the evidence sought is

of the sort that can reasonably be expected to be kept for long periods of time in

the place to be searched." *United States v. Craig,* 861 F.2d 818, 823 (5th Cir. 1988)

citing *United States v. Freeman*, 685 F.2d. at 951-952. In *Freeman*, the

information sought to be seized, passports, identification papers and bank records

were recognized as items that "could be reasonably expected" to be kept for a long

period of time. *Id.,* at 952.

The search of Buffet City was to determine if there was evidence of Tang's

past violations as set out in the affidavit, as well as evidence of current violations.

Based on the affidavit, there was probable cause to believe the items described in

the warrant, which are reasonably expected to be kept for a long period of time,

would be found in the offices of the restaurant. *United States v. Craig,* 861 F.2d.

---

[2]     See also *United States v. Webster*, 960 F.2d 1301, 1307 (5th Cir. 1992); *United States v. Cherna* 184 F.3d 403, 410 (5th Cir. 1999).

823 fn. 6.

The Court does not find the affidavit stale given the particular facts of this case pertaining to the long-standing operation when combined with the information sought to be obtained.

**2. Overbreadth and Particularity of the Warrant**

It is well-settled that "[a] warrant must particularly describe the place to be searched and the person or things to be seized." *United States v. Moser*, 123 F.3d 813, 823 (5th Cir. 1997), citing *United States v. Kimbrough*, 69 F.3d 723, 727 (5th Cir. 1995), cert. denied, 517 U.S. 1157, 116 S.Ct. 1547, 134 L.Ed.2d 650 (1996). To determine whether the description of the items to be seized is sufficient, "a court must inquire whether an executing officer reading the description in the warrant would reasonably know what items are to be seized." *Moser*, 123 F.3d at 823, citing *Kimbrough*, 69 F.3d at 727.  Overbroad or general warrants violate the particularity requirements of the Fourth Amendment.  *Marron v. United States*, 275 U.S. 192, 196 (1927).  Tang argues that the 'items to be seized' referenced in the warrant are not referenced in the affidavit, and thus the affidavit provides insufficient nexus between its content and the "extensive laundry list" of items listed in the warrant and the scope of the warrant far exceeds the allegations in the affidavit.

The warrant specifically references the affidavit as the basis for probable

cause and the exhibits to the warrant are what limit the agents' discretion to searching a specific location for the specific items listed in the exhibits.  In *United States v. Layne,* 43 F.3d 127, 132 (5th Cir. 1997 ) the court recognized that the test for particularity may be satisfied with supporting affidavits if the warrant refers to the affidavit, however, where detailed particularity is impossible, generic language, if it particularizes the types of items to be seized is permissible. *United States v. Webster,* 734 F.2d at 1055; See also *United States v. Moser*, 123 F.3d 823, FN. 7.

The affidavit includes the following pertinent facts to this inquiry: Tang is the owner/manager of the Buffet City restaurant.  He signed checks for rental payments drawn on the business accounts of Tian Hua, Inc. DBA Buffet City (the entity which leased the apartments where Cruz-Orellano lived) and Tian Ming, Inc. DBA Buffet City (the entity which leased the apartment on Scotsdale St). Cruz-Orellano, who was arrested and prosecuted for illegal re-entry in this court, stated that he worked at Buffet City, was never asked to provide paperwork or documentation, did use his real name at work, was paid in cash and he and other illegal Hispanics who worked at Buffet City lived in the apartments leased by Tuan Hua Inc. DBA Buffet City.  Tang owned a vehicle observed to transport individuals who were identified as workers to/from Buffet City.

The search warrant identified the place to be searched as the Buffet City

restaurant.  There is no dispute by Tang that he owned that restaurant during at least part of the time period referenced in the affidavit, and he worked at the restaurant during the entire period referenced in the affidavit.

Special Agent Touchet averred that it is common practice for violators to not require applicants and employees to present proof of employment authorization, submit photo identification or complete employment documentation to include the federally mandated Form I-9 Employment Eligibility Verification Form. I-9 forms are required to be maintained for three years after the date of hire or one year after the date of termination whichever comes last. The employer is responsible for making sure these forms are properly done.

Touchet also averred that illegal aliens work more than 40 hours, without overtime, at less than minimum wage. They are paid in cash only and the violators fail to report wages or issue Form W-2 wage and tax statements. Finally, he averred violators essentially create two classes of workers - those that are paid with checks and documented correctly who are United States citizens and those who are paid in cash and have no documentation or record of payment who are illegal aliens.

By taking these steps, violators evade minimum wage compensation, overtime compensation, state and federal tax payments, unemployment compensation costs and worker's compensation premium costs resulting in

financial gain.

The warrant listed the following items to be seized:

Books, records, employment eligibility verification forms (Form I-9), receipts, notes, ledgers and other papers relating to Tian Hua, Inc. DBA Buffet City, Tian Ming, Inc. DBA Buffet City, Tian Lei Tang, and Hua Can Ye; *or*

Books, records, receipts, bank statements and records, deposit slips, withdrawal slips, canceled checks, money drafts, check registers, money orders, cashier checks, letters of credit, bank checks, for any and all bank accounts, including all funds on deposit such as certificates of deposit, money market accounts, and bank safety deposit box records and keys and any items *evidencing the obtaining, secreting, transfer and concealment of assets*, *and the obtaining, secreting, transfer, concealment and expenditure of money*.  U.S. currency, credit cards, and confirmation receipts for money transfers, loan records including applications, financial statements and repayment records revealing date, amount and method of repayment.

Also, any safes, boxes, containers, and/or cabinets whether locked or unlocked located on the premises.

Cellular telephones, personal telephone books, and telephone records for Tian Lei Tang and Hua Can Ye.

Identification documents relating to Tian Hua, Inc. DBA Buffet City, Tian Ming, Inc. DBA Buffet City, Tian Lei Tang and Hua Can Ye including but not limited to passports; or any other foreign nationals residing in the United States or employed at Tian Hua, Inc. DBA Buffet City, Tian Ming, Inc. DBA Buffet City.

Income tax returns, tax and accounting records, financial statements book keeping and/or accounting workpapers, financial records including gross receipts and income records, loans receivable and payable records, earnings statements and any other records of income and expenses. Records of payments made to individuals and entities, Forms W-2s and 1099 and any other record of payment to workers. (Emphasis added)

There are no First Amendment issues related to the books seized as they were not being seized for the ideas contained within them. *United States v. Layne,* 43 F.3d at 133. Tang admits that the presence of documents for some workers and not others would be favorable to the government. If, as the affiant averred, two classes of workers were employed at Buffet City - those that were paid with checks, received I-9 forms and had taxes appropriately withheld, and those like Cruz-Orellano that did not because of their illegal status, the documents sought in the warrant are linked to the crimes set forth in the affidavit particularly if there is a complete absence of documentation for kitchen workers and the presence of documentation for the other workers.

Financial and accounting records can be used to document the relation between cost of goods sold to revenues and income generated to demonstrate what amounts may have been distributed in cash and not reported as suggested by Cruz-Orellano.  Bank records and statements can delineate the absence of cash deposits which would be indicative of cash being disbursed to kitchen workers. Safes, boxes, containers and cabinets are commonly used to store the items listed in the warrant for extended periods of time. Passports and other identification documents, to the exclusion of kitchen workers, is indicative of  the absence of any type of documentation for the kitchen workers.

It is reasonable to conclude that relevant evidence of the factual allegations

within the affidavit would/could be found in the books, records, bank statements, safes, tax returns, etc. of the Buffet City restaurant.  There is sufficient nexus between what is in the affidavit and what is delineated on the warrant.  The Court finds the warrant is sufficiently particular to place the agents on reasonable notice of what items were to be seized and the scope does not exceed the probable cause set forth in the affidavit.

**3. Probable Cause**

The probable cause determination is a "practical, common-sense decision" whether, given all the circumstances set forth in the affidavit, there is a "fair probability" that contraband or evidence of a crime will be found in a particular place. *United States v. Tovar,* 719 F.3d 376, 385 (5th Cir. 2013); *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332-33, 76 L.Ed.2d 527 (1983); *United States v. McKeever*, 5 F.3d at 865.[3]  The inquiry at the motion to suppress stage is whether the magistrate judge has a "substantial basis for believing there was probable cause for the search." *United States v. Shugart*, 117 F.3d 838, 843 (5th Cir. 1997), *United States v. Cherna*, 184 F.3d at 407.

The affidavit alleges the defendants violated 8 U.S.C. § 1324(a)(1)(A)(iii)

---

[3]     The government has not asserted any argument or evidence regarding the good-faith exception in defense of this motion, therefore, the undersigned will analyze only whether the affidavit provides a substantial basis to believe there was probable cause for the search. *United States v. Allen* 625 F.3d 830, 835 (5th Cir. 2010).

which prohibits any person who--

> (iii) knowing or in reckless disregard of the fact that an alien has
> come to, entered, or remains in the United States in violation of law,
> conceals, harbors, or shields from detection, or attempts to conceal,
> harbor, or shield from detection, such alien in any place, including
> any building or any means of transportation.

The affidavit contained the qualifications of the agent, the relationship of

the defendant as an owner/manager of Buffet City, and the historical practices of

those who harbor/shield illegal aliens in employment settings for financial gain.

The affidavit contained the identities of six foreign nationals who were

undocumented and employed at Buffet City and  the description of a vehicle

registered to the defendant that was used to transport workers to Buffet City. The

affidavit identified multiple rent checks for multiple locations drawn on the

business accounts of the corporations doing business as Buffet City signed by the

defendant. There are also statements of an identified witness, Cruz-Orellano, who

was being prosecuted for illegal re-entry, who worked at Buffet City. He described

the apartments where other illegal aliens who worked at Buffet City resided

pursuant to a lease in which one of the corporations doing business as Buffet City

was the lessee. The rent checks for these apartments were also signed by the

defendant. Cruz-Orellano also described the circumstances of his employment

which corroborated the historical practices referenced by the affiant. Finally,

surveillance confirmed the workers who resided at the apartments were moved to

another location leased by one of the co-defendants, who also had the utilities registered in his name. Rent checks were drawn on the account of one of the corporations doing business as Buffet City.

Considering the totality of the circumstances, this Court finds now, as it did at the time the warrant was executed, that there was probable cause to believe that evidence of the crime of harboring/shielding illegal aliens would be found at Buffet City. The defendant's argument lacks merit.

### *Conclusion and Recommendation*

This Court concludes the affidavit provided in support of the search warrant did set forth sufficient information to find probable cause for the search of Buffet City. Because of the long standing and ongoing pattern of conduct, combined with the fact the information sought to be seized was of a type that is kept for a long period time, the warrant was not stale. Given the description of the activities of the defendant, there is a sufficient link between the items sought to be seized in the warrant and the affidavit and the items are defined with sufficient particularity that a reasonable officer would know what could be searched/seized pursuant to the warrant.

Therefore, considering the foregoing,

**IT IS RECOMMENDED** the defendant's motion to suppress be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1) and Fed.R.Cr.P.59(b)(2),

parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or on a date set by the district court, shall act to waive the party's right to review by the district court. Fed.R.Cr. P. 59(b)(2).

Signed at Lafayette, Louisiana on this 30th day of August 2013.

_____
      PATRICK J. HANNA
      UNITED STATES MAGISTRATE JUDGE

Copy sent:  RTH
On:  9/3/2013
By:  MBD